Good morning. May I please the Court? Meredith Phan for Appellant Vinh Nguyen and I'd like to reserve two of my ten minutes for rebuttal, please. Well, we're here today to see about a case where procedural complexities of AEDPA, unless this Court takes some action in reverses, this is going to wind up being one of those situations where the procedural snags of the AEDPA have defeated a prisoner's opportunity to seek Federal review of his constitutional rights. That was one of the purposes of it. Exactly, Your Honor. Well, I don't understand. The purpose of it was correct. The purpose of it was to make sure that the procedures are met or else you don't get to present your claim. Well, to that end, Your Honor, AEDPA and its difficulties aside, if I understand it right, what Judge Breyer did was to say the simple Rule 60B procedure, which has been around forever, wasn't followed either because this was an unreasonable delay in pursuing relief. And that ended it. So why was Judge Breyer wrong? Judge Breyer was wrong because his ‑‑ because it was an abuse of discretion in his finding that the Petitioner, the Appellant, lacked diligence under the circumstances. Well, it was two years. It was brought two years after the State court denied his habeas petition, right? That's right. And five years after dismissal of the Federal habeas petition. Okay. First of all, Your Honor ‑‑ So Judge Breyer says, hey. An important point, by the way, is that his initial habeas petition was done in a timely fashion. So this is not a case of someone who has sat on their ‑‑ on his rights, okay? Which is really ‑‑ Part of the point, which is that waiting two years to bring this one was unreasonable. Well, no, that wasn't a matter of sitting on his rights during that two‑year period, Your Honor. That was a matter of he had already done everything he could do. He had already asked his appointed appellate lawyer, Cynthia Thomas, what had happened as far as exhaustion. And she had already assured him, oh, we did a joinder, everything was fine. And she did not check her files. And, in fact, the only thing that triggered a change in that was my getting retained and involved in the case. Now, I'm not sure what he is ‑‑ what more he as a prisoner could have done. He had already approached his lawyer and confronted her. He had already raised the issues with the courts. On top of it, his language barrier, while not alone dispositive of the issue, is certainly a factor that must be played into the reasonableness determination here. So imagine, Your Honor, being in a foreign country, not so adept with language, not sophisticated, having taken great pains to do everything right in the first place. Then things are going wrong. You don't understand why. The prison has lost your papers. It's starting to feel mighty Kafkaesque, if you had any idea what Kafkaesque meant. Judge Breyer observed that, you know, despite all those difficulties, there obviously are impediments that the courts might not have. But Judge Breyer noted that despite all that, he did pursue claims in the State system. I mean, he filed his State habeas petition in timely fashion after denial of the ‑‑ or after dismissal of the Federal habeas petition. And it was during that same period that he was in administrative segregation, had the language difficulties, and had lost his legal papers. Your Honor, the filing of that State habeas petition actually reflects diligence in terms of Mr. Wynn trying to do something. That is exactly Judge Breyer's point, is that he could diligently do things despite the handicaps that he was under, but he sat on bringing his Rule 60B motion for two years, and that was unreasonable. Not that, yes, only if you omit the crucial fact that the filing of his State petition ultimately proved to be inept. In other words, he was diligent, but he wasn't capable even putting forth his diligent use of all the resources he had. It didn't cut it in terms of navigating complex Federal habeas procedure, did it? I mean, back to the AEDPA question. You know, we could debate whether AEDPA itself is a State‑imposed impediment, but, you know, that's another story. Why not? It might go there, actually, but it need not go there. But every petitioner, every Federal habeas petitioner, confronts the same circumstances, and very rarely do we see a case where someone has just waited two years without much of an explanation. And so the question is, why do we think Judge Breyer abused his discretion? What else would you have had him do? Would you have him be a vexatious litigant and keep pounding the courts when they had already told him, no, what you've done is wrong, you've procedurally defaulted? He had no clue what to do. He did everything he could think of, and then he had no clue what to do. What more do we even want him to do? Do we even want pro se petitioners to keep filing and filing and filing when they've already been spun about and turned upside down by the system between double layer misadvisements, CDC losing their papers, he doesn't want to be rude? And, you know, it's not a half bad idea. What he did decide to do, which was, you know, something, I think I'd better learn the language here. I think I'd better learn English and educate myself, and then see what I can do, because with the education that I have right now and what I've got in between my ears right now, it's just a waste of other people's time that they're shutting me down and telling me I'm doing it wrong and can't have my case considered because I'm not doing it right. I don't know what to do. Maybe I'd better learn the language, educate myself. And that's what he did. That's what he did. He hit the books. And in 2003, he got his GED, which, God bless him, I still don't know how he would have navigated his way out of this mess. I mean, the law itself was in flux at the time that all this happened, what with Plyler Ford and all that. And, of course, we know the outcome, that he, it turns out, he wasn't deprived of advisements to which he should have been entitled from the bigger picture point of view. Although the way this Court was running things for part of that time, he actually was deprived in terms of the custom and practice of what was actually going on here in the Ninth Circuit in those days. Of course, he didn't have anybody to point this out to him, and he didn't have any ability to find it out for himself. And he did, he was proactive. He contacted his lawyer and said, hey, what's going on? And she said, oh, you're fine. And here he's uneducated, doesn't speak the language very well, from another culture, and thinks how could they be, how could it be that all these people are wrong? How could it be that they're all wrong? I don't want to insult anybody, I'm not sure what to do. And, in fact, as a matter of policy, do we really want to even encourage somebody to keep pounding the courts with inept papers as they try to guess, oh, oh, does this one fit, does this one fit, does this one fit? Whoops, out of time. Well, at least I've been keeping the courts busy filing this, this, this, this, and this, getting it wrong all along the way, until finally I heard about a lawyer who could help me. That's not reasonable either, and it's not desirable. The courts are busy enough, and I am just about out of time. I'd like to save some for rebuttal, a few seconds at least. Thank you. Breyer. Counsel says that the defendant was inept. The defendant was not inept. The defendant did exactly what he was supposed to do. He followed the court's order to go back and exhaust his unexhausted claim. This part of the discussion has nothing to do with AEDPA. It's been around a long time. He understood it, and he showed his competence by filing a perfectly appropriate and intelligent petition. Then, after that was denied, he did nothing for two years, even though the court had instructed him to come back and file your properly exhausted petition in federal court. So there is no question that this person demonstrated his competence. Although he did get his GED degree, I believe it was six or nine months after he was denied in the State habeas, he has a work record that long preceded that as a clerk typist showing that he was competent in the English language, as indeed does his petition itself. And finally, none of this matters. This claim has been adjudicated. This Court has adjudicated it in the context, not just this claim, this unexhausted claim that he now wants to bring forward, but the other claims as well. This Court has adjudicated it in the context of the co-defendant. Appellant comes here, and he says, she says, oh, I'm in a different position from my co-defendant because I was more aggrieved by this or prejudiced by this evidence that should have been admitted. That's not the case. I don't accept that. But even if it were the case, Appellant has given no, and here we do get to AEDPA, no reason to believe that United States Supreme Court authority was improperly or unreasonably applied. The guiding case is something like Chambers v. Mississippi or like cases that said if you have a reasonably reliable confession and you exclude that, that is a due process violation. In no way could this evidence here be conceivably remotely comparable to that, to that excluded evidence. If the Court has no further questions, I'll close. Thank you. We've got 33 seconds. Is it over? Thank you, Your Honor. I just want to emphasize that the fact that this is a prisoner who was diligent at the gate post in itself distinguishes this from all those other cases that are not entitled to equitable tolling. That alone is a reason, let alone all the other particulars. Your Honors, please don't let this be one of those classic cases of procedural uncertainty snuffing out a constitutional claim. I explained in briefing why this claim has not already been heard in another person's case. Thank you. Thank you, counsel. Final case of the morning will be Brown v. Del Papa.
judges: Reinhardt, Rymer, Thomas